**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| JOAQUIN Q. ATALIG,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA; BARACK OBAMA, in his official capacity as President of the United States; JANET NAPOLITANO, in her official capacity as Secretary of Homeland Security; KEN SALAZAR, in his official capacity as Secretary of the Interior; HILLARY R. CLINTON, in her official capacity as Secretary of State; HILDA L. SOLIS, in her official capacity as Secretary of Labor; and ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States,<br><br>    Defendants. | Case No.: 1-11-CV-00023<br><br>MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS |

## I.     INTRODUCTION

Title VII of the Consolidated Natural Resources Act of 2008 ("CNRA") provides for the eventual extension of all federal immigration law to the Commonwealth of the Northern Mariana Islands ("CNMI" or "Commonwealth").  Prior to November 28, 2009, when the essential provisions of Title VII took effect, the CNMI controlled most aspects of immigration to the Commonwealth.  For decades, the CNMI relied on a labor force of foreign contract workers to

-1-

support many of its businesses and industries. Under the CNRA, the Commonwealth no longer issues its own work visas or otherwise regulates the flow of foreign workers across its borders. Immigration policy with respect to the CNMI is now made by the federal government.

Plaintiff Joaquin Q. Atalig ("Atalig") believes that the CNRA violates the right of the people of the Northern Mariana Islands to self-government. In this lawsuit, Atalig seeks (1) a declaration of his rights under the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union With the United States of America ("Covenant"), the United States Constitution, and the Trusteeship Agreement for the Former Japanese Mandated Islands ("Trusteeship Agreement"), and (2) a court order enjoining the United States of America, the President of the United States, and five Cabinet secretaries (collectively "Defendants") from enforcing Title VII of the CNRA.

Defendants have moved to dismiss this action on the grounds that it is barred by the doctrine of *res judicata,* which in certain circumstances prohibits a party from relitigating a claim. Defendants assert that Atalig's claims were decided three years ago when the CNMI government unsuccessfully challenged the validity of the CNRA in federal court in the District of Columbia. They maintain that the CNMI sued on behalf of all the people of the Commonwealth, and therefore no individual CNMI resident may raise the same claims in a subsequent lawsuit.

The matter has been fully briefed.[1] The parties argued the motion at a hearing on May 10, 2012. Having considered all the papers and the arguments of counsel, the Court GRANTS the Motion to Dismiss, on the alternative grounds of lack of subject matter jurisdiction. The

---

[1] Defendants' Motion to Dismiss; ECF No. 8, and Memorandum in Support ("MTD Memo."), ECF No. 8-1; Atalig's Opposition ("Opp."), ECF No. 12, and three attached exhibits, ECF Nos. 12-1, 12-2, and 12-3; and Defendants' Reply, ECF No. 13.

Court concludes that Atalig lacks standing to maintain this action, as explained below.

## II.     BACKGROUND

In his Complaint for Declaratory and Injunctive Relief (ECF No. 1), Atalig alleges the following pertinent facts.  In 1947, the United States and the United Nations Security Council entered into the Trusteeship Agreement, pursuant to which the United States administered many Pacific islands formerly under Japanese mandate, including the Northern Mariana Islands.  (Compl. ¶ 13.)  The Trusteeship Agreement obligated the United States to "promote the development of the inhabitants . . . toward self-government or independence."  (Compl. ¶ 14, quoting Trusteeship Agreement, art. 6(1), 61 Stat. 3302.)  In 1976, the United States and the Northern Mariana Islands entered into the Covenant,[2] whose stated purpose was to establish a self-governing Commonwealth of the Northern Mariana Islands within the American political system and to secure for the people of the Northern Mariana Islands the right of local self-government.  (Compl. ¶¶ 16–18.)  In 1986, the President of the United States proclaimed the termination of the Trusteeship Agreement with respect to the Northern Mariana Islands and declared the islands to be self-governing.  (Compl. ¶ 20.)

The Covenant provided that most federal laws would apply in the Commonwealth as they apply in the states and in Guam.  (Compl. ¶ 23.)  United States immigration and naturalization laws, however, would not apply in the Commonwealth, "except in the manner and to the extent made applicable to them by the Congress after termination of the Trusteeship Agreement."  (*Id.,* quoting Covenant § 503.)  For decades, the Commonwealth regulated and administered immigration to the Northern Mariana Islands, during which time thousands of foreign nationals

---

[2] Pub. L. 94-241; 90 Stat. 263; *codified at* 48 U.S.C. § 1801 note.

"became central and integral to the social and economic life of the CNMI."  (Compl. ¶ 25.)

In 2008, the President signed into law the CNRA.[3]  (Compl. ¶ 26.)  Title VII of the CNRA provides for the phasing-in of federal responsibilities for immigration in the Commonwealth over a period of five years, ending December 31, 2014.  (Compl. ¶¶ 26–27.)  The Secretary of Labor may extend this transition period indefinitely, by five-year increments.  (Compl. ¶ 27.)  During the transition period, the Secretary of Homeland Security may establish and administer a system of CNMI-only nonimmigrant worker permits.  (*Id.*)  This system is separate from the visa system for entry into the United States created pursuant to the Immigration and Nationality Act.  (*Id.*)   By operation of the CNRA, United States immigration law supersedes and replaces all Commonwealth laws relating to the admission and removal of aliens.  (*Id.*)

Soon after passage of the CNRA in 2008, the Commonwealth filed a complaint alleging that those provisions which apply federal immigration laws in the CNMI violate the Covenant.  *See Commonwealth of the Northern Mariana Islands v. United States,* 670 F. Supp. 2d 65 (D.D.C. 2009).[4]  The United States District Court for the District of Columbia dismissed the suit, finding that "the challenged provisions of the CNRA comply with the mutual consent provision of Section 105 [of the Covenant] and the 'self-government' guarantee of Section 103."  *Id.* at 91.

In November 2011, Atalig initiated his own lawsuit to invalidate the CNRA's provisions with respect to immigration laws.  Atalig was born on the island of Rota, in what is now the Commonwealth, in 1944.  (Compl. ¶ 2.)  He was living on Rota at the time it was administered

---

[3] Pub. L. 110-229, S. 2739, 122 Stat. 754–876 (2008).

[4] The court takes judicial notice of the 2008 lawsuit.  A court "may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute."  *Intri-Plex Techs., Inc. v. Crest Grp., Inc.,* 499 F.3d 1048, 1052 (9th Cir. 2007) (citation and internal quotation marks omitted).

by the United States under the Trusteeship Agreement. (*Id.*) In 1986, he became a United States citizen by virtue of Section 301 of the Covenant. (*Id.*) He is registered to vote in the CNMI. (*Id.*) He is the proprietor of a hotel on Rota and some rental properties on the island of Saipan. (*Id.*)

### III.   DISCUSSION

A court must dismiss an action if at any time it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Defendants urge the court to bar Atalig's claims on grounds of *res judicata,* or claim preclusion. Preclusion is not a jurisdictional matter, however, but an affirmative defense. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 293 (2005); Fed. R. Civ. P. 8(c). A federal court must determine whether it has jurisdiction before proceeding to the merits of a claim. *Lance v. Coffman,* 549 U.S. 437, 439 ( 2007) (per curiam). Therefore, the court first addresses the jurisdictional issue.

A "necessary component" of subject matter jurisdiction is Article III standing. *Palmdale Hills Prop., LLC v. Lehman Commer. Paper, Inc. (In re Palmdale Hills Prop., LLC),* 654 F.3d 868, 873 (9th Cir. 2011). Article III of the United States Constitution "limits federal-court jurisdiction to 'Cases' and 'Controversies.'" *Massachusetts v. EPA,* 549 U.S. 497, 516 (2007). Without a proper case or controversy, "the courts have no business deciding [a dispute], or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 341 (2006).

To have constitutional standing to bring a claim, a plaintiff "must show (1) [he or she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will

be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–181 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561 (1992)).

Atalig lacks standing because his complaint is a generalized grievance insufficient to show an injury in fact. A plaintiff who "rais[es] only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lance,* 549 U.S. at 439 (quoting *Lujan,* 504 U.S. at 573–574). In *Lance,* four Colorado voters sued in federal court alleging that the redistricting restrictions of the Colorado Constitution violated their rights under the Elections Clause of the United States Constitution. *Id.* at 438. Colorado's Attorney General and General Assembly had already litigated that issue in the state's supreme court. *Id.* A three-judge panel of the federal district court found that the voters' claims were precluded and dismissed the case. *Id.* One judge, concurring in the result, "concluded that appellants lacked standing to sue in the first place." *Id.* at 439. The United States Supreme Court, upon direct appeal pursuant to 28 U.S.C. § 1253, agreed with the concurrence that the four voters lacked standing. *Id.* at 442. The Court noted the "lengthy pedigree" of its "refusal to serve as a forum for generalized grievances . . ." *Id.* at 440; *see also Fairchild v. Hughes,* 258 U.S. 126 (1922) (citizen suit challenging procedures for ratification of constitutional amendment not an Article III case); *Ex parte Levitt,* 302 U.S. 633 (1937) (per curiam) (no citizen standing to challenge legality of Justice Hugo Black's appointment to Supreme Court); *United States v. Richardson,* 418 U.S. 166 (1974) (no taxpayer standing to sue over Congress's alleged violation of Accounts Clause); *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208 (1974) (rejecting generalized

grievance under Incompatibility Clause).  Such grievances fail to present a real case or controversy because the plaintiff does not "aver an injury peculiar to himself, as distinguished from the great body of his fellow citizens[.]" *Id.* at 440 (quoting *Tyler v. Judges of Court of Registration,* 179 U.S. 405, 406 (1900)).

Atalig fails to allege any injury peculiar to himself.  He describes himself as the proprietor of a hotel and rental units, but he does not say how, if at all, the CNRA harms him as a property owner or businessperson.  His central complaint is that the "implementation and enforcement of the CNRA in the CNMI . . . inherently violates the Covenant's guarantee of self-government to the people of the Northern Mariana Islands, including Plaintiff."  (Compl. ¶ 42.)  His alternative claims – that any provision of the Covenant which would allow infringement of the people's right of self-government must violate the Constitution, and that the United States has an independent obligation under the Trusteeship Agreement to secure self-government for the people of the Northern Marianas – are equally general.  These are abstract injuries of the kind that federal courts have no jurisdiction to redress.  "[S]tanding to sue may not be predicated upon [a generalized] interest . . . which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." *Schlesinger,* 418 U.S. at 220 (injury from violation of constitutional provision prohibiting members of Congress from holding other federal office).

Atalig asks the court to declare "that *his* right of self-government under the Covenant, and that of the people of the Northern Mariana Islands, is infringed by the CNRA . . ."  (Compl. ¶ 44) (emphasis added).  Although Atalig certainly partakes of the citizenry's right to self-government, it is not a right personal to him.  *Cf. Keen v. United States,* 981 F. Supp. 679 (D.D.C. 1997) ("denial of the abstract right of self-determination or self-government" alleged by

member of Cherokee nation "cannot support standing to sue").  When a grievance is shared "in substantially equal measure by all or a large class of citizens," as Atalig recognizes his grievance to be, "that harm alone normally does not warrant exercise of jurisdiction."  *Warth v. Seldin,* 422 U.S. 490, 499 (1975).  As an act of "judicial self-governance," the federal courts prudently refrain from "decid[ing] abstract questions of wide public significance [which] other governmental institutions may be more competent to address . . ."  *Id.* at 500.  "Refusing to entertain generalized grievances ensures that 'there is a real need to exercise the power of judicial review' in a particular case, and it helps guarantee that courts fashion remedies 'no broader than required by the precise facts to which the court's ruling would be applied."  *Lance,* 549 at U.S. 441 (quoting *Schlesinger,* 418 U.S. at 221–222) .  The questions that Atalig raises in his complaint are precisely of this type.  Without offering any view on their merits, the Court declines to consider them for lack of jurisdiction.

### IV. CONCLUSION

Because Atalig lacks standing, the Court hereby dismisses this action.

**SO ORDERED** on July 20, 2012.

_____

RAMONA V. MANGLONA, Chief Judge